

ENTERED
11/06/2017

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| CARLOS HURTADO; aka HURTADO; | § | CASE NO: 17-10074 |
| aka MALDONADO, *et al* | § | |
|     Debtors | § | |
| | § | CHAPTER 7 |
| | § | |
| | § | JUDGE EDUARDO V. RODRIGUEZ |

**MEMORANDUM OPINION**
**GRANTING DEBTORS' MOTION TO CONVERT TO CHAPTER 13**
*Resolving ECF No. 24*

## I. INTRODUCTION

The instant matter presents the Court with the occasion to consider whether debtors who transferred a rental property to their daughter four and a half years pre-petition are acting in good faith by seeking conversion from a chapter 7 bankruptcy to a chapter 13. This Court considers the pleadings, the arguments presented by the parties, the evidence, and relevant case law. For the reasons discussed below, the Court finds that the Debtors' Motion to Convert should be granted.

## II. FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

On March 2, 2017, Carlos and Consuelo Hurtado ("*Mr. & Mrs. Hurtado* or *Debtors*")

filed their initial petition under chapter 7 of title 11 of the Code.[1]  ECF No. 1.  In Schedule A, Debtors list their homestead and two burial plots as their real property.  *Id.* at 9–10.  Debtors properly exempted the real property listed on Schedule A pursuant to 11 U.S.C. § 522(l).  The deadline to object to Debtors' exemptions was May 26, 2017.  *See* Fed. R. Bankr. P. 4003(b) (listing the deadline to object to an exemption as "30 days after the meeting of creditors held under § 341(a) is concluded").  No party objected to Debtors' exemptions, and thus the real property listed in Schedule A is exempt.  *See* § 522(l); Fed. R. Bankr. P. 4003.

In Schedule I, Mr. Hurtado is listed as a migrant worker and earns approximately $380.55 per month.  *Id.* at 35.  Additionally, Mr. Hurtado declared rental property income in the amount of $601.00, Social Security benefits in the amount of $1,254.00, and income from seasonal crop work in the amount of $1,762.33 for a combined total of $3,617.33 per month.  *Id.* at 36.  Mrs. Hurtado, however, is retired and receives approximately $470.00 in Social Security benefits monthly.  *Id.*  Thus, combined, Debtors declared a total of $4,425.83 per month on Schedule I.  *Id.*  On Schedule J, Debtors listed $4,421.32 in monthly expenses leaving a $4.51 in monthly net income.  *Id.* at 40.  Finally, on Line 23 of their Statement of Financial Affairs ("*SOFA*"), Debtors list that they control a property owned by Samuel Salas III ("*Salas*"), described as Lot 21, Block 3, La Posada South Subdivision Section II, in Cameron County Texas and located at 1648 Siesta Dr., Brownsville, Texas (the "*Property*").  *Id.* at 50.

On April 26, 2017, the chapter 7 trustee, ("*Trustee*") conducted the first meeting of creditors where potential assets were discovered, which were noted on the Court's docket. Min. Entry 4/26/2017.  On June 8, 2017, Trustee filed a Notice of Assets, Notice to Creditors and Other Parties in Interest of the Need to File Claims setting a deadline of September 11, 2017 to

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

file claims. ECF No. 19. The total amount of allowed general unsecured claims is $18,363.55.

On June 13, 2017, Trustee filed an adversary complaint against Debtors' daughter, Nereida Hurtado ("*Nereida*"), seeking to avoid the transfer of the Property. ECF No. 21. The Trustee alleged that Debtors conveyed the Property to Nereida on September 27, 2012, but that Debtors retained control or possession of the Property, pay the ad valorem taxes and maintenance, and receive all the rental income from the Property. *Id.* at 2. Further, Trustee alleged that Debtors concealed assets by failing to adequately disclose their interest in the Property on the SOFA, Schedule I, and Means Test. *Id.*; *see also* ECF No. 1.

On July 4, 2017, Debtors filed their Motion to Convert to Chapter 13 (the "*Motion*") in response to Trustee's adversary complaint asserting that "[r]ather than trying to defend against Trustee's complaint, Debtors desire to convert their case to Chapter 13 and pay their creditors in full or pay the value of the property in question." ECF No. 24. Debtors suggest that because the Property was transferred to Nereida more than four years pre-petition they were not required to disclose the Property. *Id.* at 2. Further, Debtors note that they fully disclosed the rental income received from the Property and listed the Property on the SOFA to show the source of the rental income. *Id.*

On July 14, 2017, Trustee filed a Response to the Motion ("*Response*"), which asserts that Debtors have not properly disclosed their interest in the Property. ECF No. 27. Trustee notes that Debtors do not list expenses for the Property on Schedule J or the Means Test. *Id.* at 2. Further, Trustee asserts that Debtors did not list the rental income on their SOFA, but that the rental income and expenses are listed on Debtors' tax returns. *Id.* Trustee contends that Debtors may not convert to a chapter 13 because they do not qualify as chapter 13 debtors because they will not be able to propose a feasible chapter 13 plan. *Id.* at 3–4. Finally, Trustee asserts that

Debtors have not acted in good faith and that the Court should deny the Motion. *Id.* at 4.

On July 26, 2017, Debtors filed Amended Schedules I and J listing. ECF No. 34. Although no changes were made to Schedule I, the following changes were made to Schedule J:

 i. Line 6c was adjusted from $285.00 to $115.00;

 ii. Line 7 was adjusted from $200.00 to $170.00;

 iii. Line 9 was adjusted from $115.00 to $40.00;

 iv. Line 10 was adjusted from $100.00 to $0.00;

 v. Line 12 was adjusted from $250.0 to $150.00;

 vi. Line 13 was adjusted from $100.00 to $0.00;

 vii. Line 17b was adjusted from $89.00 to $0.00 because the vehicle was paid off;

 viii. Line 20b was adjusted from $0.00 to $60.00;

 ix. Line 20d was adjusted from $0.00 to $20.00; and

 x. Line 21, which accounts for Mr. Hurtado's expenses as a migrant worker, was adjusted from $1,130.00 to $965.00.

*Id.* at 5–6. Debtors' new monthly expenses totaled $3,672.32 resulting in a monthly net income of $753.51. *Id.* at 6.

On September 1, 2017, Debtors once again filed an Amended Schedule J and made the following adjustments:

 i. Line 4c was adjusted from $0.00 to $122.00;

 ii. Line 6a was adjusted from $250.00 to $170.00;

 iii. Line 6b was adjusted from $110.00 to $160.00;

 iv. Line 6c was adjusted from $115.00 to $130.00;

 v. Line 7 was adjusted from $170.00 to $400.00;

 vi. Line 9 was adjusted from $40.00 to $70.00;

    vii.    Line 10 was adjusted from $0.00 to $55.00;

    viii.    Line 11 was adjusted from $120.00 to $150.00;

    ix.    Line 12 was adjusted from $150.00 to $380.00;

    x.    Line 13 was adjusted from $0.00 to $60.81;

    xi.    Line 14 was adjusted from $0.00 to $25.00;

    xii.    Line 15c was adjusted from $348.64 to $170.00; and

    xiii.    Line 21, which accounts for Mr. Hurtado's expenses as a migrant worker, was adjusted from $965.00 to $375.00.

ECF No. 43 at 1–3. These adjustments total $3,671.49 in monthly expenses and result in a monthly net income of $754.34. *Id.* at 3.

On September 5, 2017, this Court held a hearing on the Motion. The following Debtors' exhibits were admitted:

    Exhibit A – Deed from Debtors to Nereida;

    Exhibit B – Copy of Cameron CAD Details of the Property;

    Exhibit C – Deed from Nereida to Salas;

    Exhibit D – Chapter 7 Bankruptcy SOFA;

    Exhibit E – Chapter 7 Bankruptcy Schedules I and J;

    Exhibit G – Debtors' Tax Returns; and

    Exhibit H – Lease Agreements for the Property.

The following exhibits were admitted on Trustee's behalf:

    Exhibit A – Motion;

    Exhibit B – Trustee's Response to Motion;

    Exhibit C – Original Schedules I and J;

    Exhibit D – Original SOFA;

    Exhibit E – Original Means Test;

    Exhibit F – Original Schedules E and F;

    Exhibit G – September 20, 2012 Deed;

    Exhibit H – September 30, 2016 Deed;

    Exhibit I – Recording of 341 Meeting of Creditors on April 26, 2017;

    Exhibit J – Debtors' Written Response to Trustee's Inquiry;

    Exhibit K – June 6, 2017 E-mail;

    Exhibit L – Application to Employ Michael B. Schmidt ("*Schmidt*");

    Exhibit M – Order Approving Employment of Schmidt;

    Exhibit N - Adversary Complaint, Case No. 17-1004; and

    Exhibit O – Amended Schedules I and J.

At the hearing, the Court heard testimony from Mr. Carlos Hurtado, Mrs. Consuelo Hurtado, and Nereida. Min. Entry 9/5/2017. Mr. Hurtado testified that:

i. he initially owned the Property as his homestead until 2002 and then began renting it out;

ii. he transferred the Property to Nereida in September 2012 and recorded the deed with Cameron County;

iii. the tenant renting the Property receives housing assistance from the Brownsville Housing Authority;

iv. Nereida has him keep the rental income from the Brownsville Housing Authority because she lives with him;

v. he is paying property taxes with the rent;

vi. he reports the rental income on his tax returns;

vii. he has the ability to make chapter 13 payments and intends to pay back his creditors in full through a chapter 13 bankruptcy;

viii. he did not try to hide the Property or the rental income from Trustee.

On cross-examination, Mr. Hurtado testified that:

i. he continues to pay expenses and some of the property taxes on the Property with the rental income;

ii. he transferred the Property to Nereida because he was in poor health and he and his wife had already moved out of the Property.

The Court finds Mr. Hurtado's testimony to be credible.

Mrs. Hurtado testified that:

i. she never tried to hide the transfer of the Property or the rental income from the Property from Trustee;

ii. she can afford to make payments of approximately $750.00 a month for the next five years in chapter 13.

On cross examination, Mrs. Hurtado testified that:

i. she and her husband were in debt when they transferred the Property to Nereida;

ii. the expenses Debtors pay on the Property are paid with the rental income;

iii. Debtors report the income and expenses related to the Property on their tax returns

The Court finds Mrs. Hurtado's testimony to be credible.

Nereida testified that:

i. she continued to give her parents the rental income from the Property after the transfer because she, her husband, and her children live with Debtors and the rental income given to her parents from the Property serves in lieu of rent;

ii. she and her husband pay their own expenses and she is not an economic dependent of Debtors;

iii. she would be able to help Debtors with chapter 13 payments if they encountered difficulties.

On cross examination, Nereida testified that:

i. she and Debtors never changed the paperwork with the Brownsville Housing Authority because it seemed unnecessary and the timing did not work out;

ii. Debtors typically collect the rent from the tenant at the Property;

    iii.      that she does not go to the Property more than twice a year;

    iv.      she does not pay maintenance expenses;

    v.       she and Debtors did not consult with an attorney regarding the transfer of the Property.

    vi.      she transferred the Property to her son, Salas, on September 30, 2016;

    vii.     she transferred the Property to Salas to ensure that it remained in the family in case she and her husband divorced.

The Court finds Nereida's testimony to be credible.

At the conclusion of the hearing, the Court took the matter under advisement and the matter is now ripe for consideration.

### III. LEGAL STANDARD

The Code provides that:

> (a) The debtor *may convert* under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable. . .
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title *unless the debtor may be a debtor under such chapter.*

§ 706(a)–(d) (emphasis added). Similar conditions for conversion are noted in § 707(b)(1) as well. Ultimately, the permissive language used in § 706 gives a bankruptcy court discretion to grant or deny such a request. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 366, 372–74 (2007) (citing to § 706(d) and contrasting bad-faith conduct against the "honest but unfortunate debtor" standard announced in *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). An individual may not be a debtor in chapter 13 if the proceeding should be dismissed "for cause," which may be demonstrated by bad faith conduct. § 1307(c); *see also Marrama*, 549 U.S. at 372–74.

Although § 1307(c) does not specify bad-faith conduct as "cause" for conversion or dismissal, "[b]ankruptcy courts nevertheless routinely treat dismissal for…bad-faith conduct as implicitly authorized by the words for cause." *Marrama*, 549 U.S. at 365, 367, n. 1, 373.  In addressing the role of bad faith, the Supreme Court stated that "a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief." *Marrama*, 549 U.S. at 367, 373–74.  The Supreme Court went further stating that "[i]t may also arise in a Chapter 7 case when a debtor files a motion under § 706(a) to convert." *Id.* (citing to circuit decisions that "virtually unanimous[ly hold] that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case").  Thus, the direct corollary is that pre-petition bad-faith conduct forfeits a debtor's right to convert to a chapter 13 case because that debtor is "not a member of the class of honest but unfortunate debtor[s] that the bankruptcy laws were enacted to protect." *Id.* (internal quotations omitted); *see also In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 371–72 (5th Cir. 1987); *In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *27 (Bankr. S.D. Tex. Aug. 7, 2017).  In *Marrama*, the Supreme Court stated that the bankruptcy court may deny a motion brought pursuant to § 706 for bad faith under 11 U.S.C. § 105 as long as the bankruptcy court does not contravene the Code.  549 U.S. at 382–83.  The Supreme Court did not specify what specific conduct qualifies as bad faith, but "emphasize[d] that the debtor's conduct must, in fact, be atypical." *Id.* at 375, n.11; *see In re Jacobsen*, 609 F.3d 647 (5th Cir. 2010).

The Fifth Circuit, *inter alia*,[2] also has held that "cause" can be a lack of good faith in the prosecution of the bankruptcy case. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071–72 (5th

---

[2] The Fifth Circuit cites supporting cases for the premise that a lack of good faith is "cause" for dismissing a case. *In re Little Creek*, 779 F.2d at 1072, n. 2.

Cir. 1986) (citing to *In re Victory Constr. Co.*, 9 B.R. 549, 551–60 (Bankr. C.D. Cal. 1981)).  In fact, the *Little Creek* court said that "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."  *Id.*; *see also In re Humble Place Joint Venture*, 936 F.2d 814, 817–18 (5th Cir. 1991); H. Miles Cohn, *Good Faith and the Single-Asset Debtor*, 62 AM. BANKR. L. J. 131, 132–36 (1988).  In *Little Creek*, the Fifth Circuit advocates for a totality of the circumstances approach because a finding of a lack of good faith is typically "predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than any single datum."  779 F.2d at 1072.

A bankruptcy court reaches a finding of lack of good faith based "upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities."  *Id.* at 1072.  However, the movant bears the burden of proving that the alleged "cause" exists by a preponderance of the evidence.  *In re TMT Procurement Corp.*, 534 B.R. at 918 (citing to *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994)); *see also* 5 Norton Bankr. L. & Prac. 3d § 103:6.  The evidence to demonstrate bad faith should "rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted."  *In re Little Creek*, 779 F.2d at 1073.

### IV. CONCLUSIONS OF LAW

#### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.  28 U.S.C. § 157(a); *see also* In re:

Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). This is a core matter as it pertains to administration of the estate. § 157(b)(2); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[3] Accordingly, this Court has jurisdiction here.

This Court may only hear a case in which venue is proper. 28 U.S.C. § 1408. In their petition, Debtors' principal residence is Brownsville, Texas. ECF No. 1 at 2. Therefore, venue is proper.

### B. Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to entry of final orders on non-core matters). However, unlike the claims in *Stern*, the instant issue derives solely from the Code, specifically § 706 and § 1307, and cannot exist outside of a bankruptcy proceeding. *Compare* ECF No. 24 *with Stern*, 564 U.S. at 499 ("Vickie's claim, in contrast, is in no way derived from or dependent upon bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding."). As such, *Stern* is not applicable and this Court holds constitutional authority to enter a final order and judgment with respect to the core matter at bar.

### C. Debtors are Eligible to Convert to a Chapter 13 Because Debtors Did Not Act in Bad Faith

At the outset, the Court finds that Debtors have not previously converted their pending bankruptcy and therefore may be eligible to convert to a chapter 13. *See* § 706(a). Accordingly, the overarching issue is whether Debtors are eligible to be chapter 13 debtors. § 706(d). Trustee contends that Debtors acted in bad faith and therefore are not eligible to be chapter 13 debtors, whereas Debtors assert that they did not attempt to hide any assets from Trustee and have

---

[3] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

consistently acted in good faith. *Compare* ECF No. 27 *with* ECF No. 24. Thus, this Court must determine whether Debtors actions constitute bad faith. *See Marrama*, 549 U.S. 375–76; *In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *37.

Bad faith conduct is egregious and atypical, not merely conduct that could have been improved upon. *In re Little Creek*, 779 F.2d at 1073. Here, the totality of circumstances must demonstrate that Debtors acted in bad faith in order to determine that the Motion should be denied. *See id.* This Court previously denied a debtor's motion to convert after the evidence demonstrated that the debtor "significantly misrepresented its financial condition on its initial schedules, compounded that by delaying its corrections, filed for bankruptcy as a litigation tactic to avoid payment of an appellate bond, did not fully cooperate with a state court appointed receiver, and transferred over $3 million of property pre-petition to insiders or affiliated entities." *In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *37–38. Although Trustee voices valid concerns about inconsistencies in Debtors' various filings in this case, Debtors conduct does not rise to the level of bad faith, such as in *Zamora-Quezada*.

From the beginning, Debtors disclosed the monthly rental income received from the Property on their Schedule I. Trustee Ex. C. at 2; Trustee Ex. E at 2; ECF No. 34. Conversely, Debtors did not account for the rental income on their SOFA. ECF No. 1 at 46. Yet, Debtors included the rental income in their calculation of monthly income on the Means Test. ECF No. 2 at 2. Pursuant to the Code, Debtors have an affirmative duty "to fully and accurately disclose all assets and interests in property," which continues throughout the case. *In re Reeves*, 509 B.R. 35, 63 (Bankr. S.D. Tex. 2014) (discussing 11 U.S.C. § 521). Debtors have fulfilled their duty to disclose in both their Schedules and Means Test, however, Debtors have failed to accurately disclose their assets on their SOFA because they did not include the rental income on their

SOFA.  *Compare* ECF No. 2 at 2 *and* ECF No. 34 *with* ECF No. 1 at 46.  Despite the inaccuracies on the SOFA, this conduct does not rise to the level of bad faith.  In *Zamora-Quezada*, the debtor amended its SOFA that presented "an entirely different situation" than the initial disclosures after filing a motion to convert.  2017 Bankr. LEXIS 2208, at *38.  Here, although Debtors' SOFA is inaccurate, the consistent disclosure of the rental income in their Schedules and on the Means Test demonstrates that Debtors were not attempting to conceal the rental income from either the Court or Trustee.  *But see id.*  No evidence was presented that Debtors were intentionally inaccurate on their SOFA.  Although this Court requires debtors fulfill their duties under the Code, the Court will not find bad faith conduct for apparent inadvertent inaccuracies.

Turning to control of the Property itself, admittedly, Debtors did not initially disclose that the Property was transferred to Nereida—and subsequently to Salas—despite the fact that Debtors receive the rental income.  The testimony at the hearing, as well as in Debtors' responses to Trustee's inquiry, bore out that neither Debtors nor Nereida substituted the contract with the Brownsville Housing Authority so that the rent checks would be sent to Nereida after the transfer.  *See* Trustee's Ex. J.  Nereida testified that she and Debtors never changed the contract because it didn't seem necessary as Nereida decided to contribute the rent payments to Debtors.  Nereida pays half of the taxes on the Property, whereas Debtors pay the other half using the rental income.  Based on the foregoing, Debtors did not intend to deceive this Court, their creditors, or Trustee regarding the existence of the Property; rather, Debtors desired to keep the Property in the family despite Mr. Hurtado's poor health.

Trustee seeks to avoid the transfer of the Property through the Code and Texas state law.  ECF No. 21.  The Code provides a mechanism to avoid transfers made within two years of filing

the petition while Texas law provides a four year look back period to avoid transfers. 11 U.S.C. § 548; Tex. Bus. & Com. Code § 24.010. Debtors transferred the Property to Nereida four and a half years prior to filing bankruptcy. *Compare* Trustee's Ex. G *with* ECF No. 1. Thus, it was reasonable for Debtors not to disclose the Property based on the express statutory language. *See* § 548; Tex. Bus. & Com. Code § 24.010. Reasonable conduct based on the Code cannot be evidence of bad faith. *See In re Little Creek*, 779 F.2d at 1073.

      Trustee asserts that Debtors' admitted motivation behind filing the Motion—avoidance of the adversary proceeding—is evidence of bad faith. Previously, the Court found that a debtor who filed bankruptcy to avoid a creditor's collection efforts for a judgment was evidence of bad faith. *In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *40–41. This is not a hard and fast rule, however. *In re Little Creek*, 779 F.2d at 1072 (emphasizing the totality of circumstances when considering a motion to convert). Debtors asserted that despite believing that the transfer of Property was outside the statute of repose, they would rather convert their bankruptcy and pay their creditors in full through a chapter 13. ECF No. 24. The current situation is not one where Debtors are attempting to avoid paying creditors. *But see In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *40–41. Debtors' monthly net income is $754.34, which can fund a chapter 13 plan in order to pay their creditors.[4] ECF No. 43. Debtors testified that they fully intend to pay back their creditors. Debtors should note that although they intend to convert their case to a chapter 13, the Trustee will be entitled to administrative expenses that can be collected through their chapter 13 plan. 11 U.S.C. § 503(b) (allowing administrative expenses for a trustee); 11 U.S.C. § 507(a)(1)(C) (noting the priority status of administrative expenses for a chapter 7

---

[4] Trustee objected that Debtors could not fund a plan based on their original monthly net income of $4.51. *See* ECF No. 1 at 40. Debtors Amended Schedule J, as well as Mr. Hurtado's testimony, demonstrates a reduction in expenses related to Mr. Hurtado's profession as a migrant worker. ECF No. 43 at 4. Most specifically, Debtors are no longer budgeting $450.00 a month in rent for an apartment in Florida for Mr. Hurtado's work season. *Compare* ECF No. 1 at 40 *with* ECF No. 43 at 4. Accordingly, Trustee's objection is moot in that regard.

trustee). Considering the totality of circumstances, this Court does not find that Debtors engaged in a bad faith litigation tactic by filing the Motion. *But see In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *40–41.

Based on the foregoing, this Court finds that Debtors have not engaged in bad faith conduct. *Marrama*, 549 U.S. at 372–74. *But see In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *49–51. Further, this Court finds that the evidence presented does not demonstrate any other cause to prevent Debtors from qualifying under chapter 13. § 1307(c). *But see In re Zamora-Quezada*, 2017 Bankr. LEXIS 2208, at *49–51. Accordingly, the Court finds that Debtors are eligible to convert their bankruptcy to a chapter 13. § 706(d); *see also Marrama*, 549 U.S. at 372–74.

## V. CONCLUSION

When considering a motion to convert, the Court must evaluate the totality of the circumstances to ensure the debtors are acting in good faith. *Marrama*, 549 U.S. at 372–74. Despite Trustee's concerns, the evidence before this Court demonstrates that—although they were not perfect—Debtors acted in good faith in filing bankruptcy and seeking to convert. This Court will not deny debtors the right to convert if they have acted in good faith and are eligible to be debtors in the chapter they seek. §§ 706, 1307(c). Therefore, Debtors' Motion to Convert, ECF No. 24, is hereby **GRANTED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 11/06/2017.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge